UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- x

UNITED STATES OF AMERICA,

        -against-                               S1 04 Crim. 0070 (LAK)

SALVATORE SCALA,

                Defendant.

------------------------------------- x

**USDS SDNY**
**DOCUMENT**
**ELECTRONICALLY FILED**
**DOC #:** _____
**DATE FILED:** 6/12/2006

## MEMORANDUM OPINION

Appearances:

        Eric Snyder
        Jonathan S. Kolodner
        Assistant United States Attorneys
        MICHAEL J. GARCIA
        UNITED STATES ATTORNEY

        Bruce A. Barket
        THE LAW OFFICES OF BRUCE A. BARKET, P.C.
        *Attorneys for Defendant Salvatore Scala*

        Daniel N. Arshack
        *Attorney for Bruce A. Barket*

        Ronald Rubenstein
        RUBENSTEIN & COROZZO, LLP
        *Attorneys for Defendant Thomas Sassano*

LEWIS A. KAPLAN, *District Judge.*

        Bruce Barket, Esq., attorney for defendant Scala, was served with a subpoena *duces tecum*. Upon the return, he declined to comply on the ground that the act of production of the documents sought would tend to incriminate him and thus declined to do so on the basis of the Fifth

2

Amendment.[1] The government now moves to disqualify Mr. Barket as counsel for Scala on the ground that Mr. Barket's invocation of the privilege against self-incrimination created an actual and therefore unwaivable conflict of interest between Mr. Barket and his client.

*Facts*

The Court assumes familiarity with its previous memoranda concerning this dispute.[2]

*Discussion*

Mr. Scala, like any criminal defendant, is entitled to conflict-free legal representation. "[W]hile a defendant generally may waive his Sixth Amendment right to an unconflicted attorney, 'the essential aim of the [Sixth] Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers.'"[3] Where an attorney labors under an actual conflict of interest, the public interest "in ensuring that criminal trials are conducted within the ethical standards of the profession and that the legal proceedings appear fair to all who observe them"[4] trumps a defendant's right to counsel of the defendant's choice and requires disqualification of the attorney. In other words, the conflict is not waivable by the defendant.

---

[1] Tr., June 1, 2006, at 38.

[2] Docket items 64, 68.

[3] *United States v. Fulton*, 5 F.3d 605, 612 (2d Cir. 1993) (quoting *Wheat v. United States*, 486 U.S. 153, 159 (1988)).

[4] *Wheat*, 486 U.S. at 160.

An attorney is regarded as having "an actual, as opposed to a potential, conflict of interest when, during the course of the representation, the attorney's and the defendant's interests diverge with respect to a material factual or legal issue or to a course of action."[5]

In this case, Mr. Barket has invoked the privilege against self-incrimination in response to a subpoena seeking records of payment of fees by or on behalf of defendant Scala in relation to his representation of Scala in a prior criminal case. The records are said to be relevant to both the pending extortion and the pending tax evasion charges against Scala. Among other things, and as spelled out in the Court's prior decisions, the government expects that they will corroborate other evidence that Scala increased the extortion payments allegedly made by victims in connection with the scheme at issue in this case to pay for his legal expenses in the prior case. Mr. Barket, moreover, has asserted that he has a good faith basis for maintaining that production of the records might tend to incriminate him.

Mr. Barket's invocation of the Fifth Amendment demonstrates that his interests and those of his client probably diverge with respect to courses of action that inevitably arise in criminal cases. The Court assumes, *arguendo*, that Mr. Barket in fact is not guilty of any offense. His invocation of the privilege against self-incrimination, however, especially coupled with his representation that it is invoked in good faith and not simply to throw a monkey wrench into the government's efforts to obtain evidence against Scala, demonstrates that he is concerned that he might "be ensnared by ambiguous circumstances"[6] and that the subpoenaed documents might

---

[5] *United States v. Levy*, 25 F.3d 146, 155 (2d Cir. 1994) (internal quotation marks and citation omitted).

[6] *Grunewald v. United States*, 353 U.S. 391, 421 (1957) (internal quotation and citation omitted).

ensnare or play a role in ensnaring him.[7] In consequence, Mr. Barket plainly has his own interest in this case – an interest in not having anything come to light that might further complicate his personal situation. As the Second Circuit wrote in *Fulton:*

> "In such circumstances, counsel is hardly an appropriate negotiator of a plea and cooperation agreement. * * * Advice as to whether the defendant should take the stand may be affected by the fear or knowledge that the defendant knows of counsel's criminal [or suspicious] activities .... Given the breadth and depth of this kind of conflict, we are unable to see how a meaningful waiver can be obtained."[8]

So too here.

Scala relies heavily on *United States v. Castellano*[9] for the proposition that a lawyer's invocation of the Fifth Amendment does not *per se* create an actual, unwaivable conflict of interest. But that reliance is misplaced for several reasons.

First, the facts of *Castellano* were quite different. The lawyer there in question had been granted immunity before the grand jury, had testified, and therefore was not in the same position in which Mr. Barket has placed himself.

Second, *Castellano* antedated the pivotal Second Circuit authorities, including *Fulton* and *Levy*. It is doubtful whether the court would have reached the same result today.

Finally, the *Castellano* court based its observation that mere invocation of the Fifth Amendment by counsel does not inevitably require disqualification on the premise that the privilege

---

[7] It long has been established that the privilege against self-incrimination is "confined to instances where the witness has reasonable cause to apprehend danger from a direct answer." *Hoffman v. United States*, 341 U.S. 479, 486 (1951).

[8] *Fulton*, 5 F.3d at 613.

[9] 610 F. Supp.1137 (S.D.N.Y. 1985).

4

against self-incrimination exists to protect the innocent as well as the guilty and that no inference of culpability on the part of the lawyer may be drawn from its invocation.[10] That of course is true. But the conclusion that *Castellano* drew from it, in this Court's view, is incorrect. Any good faith assertion of the privilege against self-incrimination is a representation that the witness fears that a response, to paraphrase *Grunewald* again, may tend to ensnare the witness in "ambiguous circumstances." It is the witness's interest in avoiding being "ensnared" that creates the conflict, and it creates the conflict regardless of whether the witness in fact is guilty of anything. Thus, the question whether the invocation of the privilege against self-incrimination implies culpability is beside the point.

Finally, Mr. Barket argues strenuously that consideration of his invocation of the Fifth Amendment in determining whether he has a conflict of interest with his client runs afoul of *Griffin v. California*,[11] which held that it is inappropriate for a prosecutor to comment upon a defendant's failure to testify because such comment would penalize invocation of the privilege by inviting the jury to draw an inference adverse to the defendant. Disqualification based upon a consideration of his invocation of the privilege, he maintains, necessarily would entail the drawing of an adverse inference.

The short answer is that the *Griffin* rule has no bearing here. Mr. Barket is not a defendant in a criminal case. He is a lawyer representing a client, and the issue before the Court is whether he may be permitted to do so consistent with the client's right to representation by conflict-

---

[10] *Id.* at 1141.

[11] 380 U.S. 609 (1965).

free counsel. For that limited purpose, it is entirely appropriate to consider the fact that his invocation of the privilege evidences the fact that Mr. Barket has a personal interest, separate and apart from that of his client, in seeking to avoid the subpoenaed documents and evidence to which they might lead coming to light.[12]

Accordingly, the Court concludes that Mr. Barket's invocation of the Fifth Amendment created an actual and nonwaivable conflict of interest that requires his disqualification. But it ultimately may be unnecessary to rest on this alone.

Even a potential, as opposed to actual, conflict requires disqualification in the absence of "clear, unequivocal, and unambiguous language" evidencing a knowing and intelligent waiver of the conflict.[13] An important part in assessing the validity of a waiver is whether the defendant seeking to waive the right to conflict-free representation is capable of giving a "narrative statement" demonstrating understanding of "the details of his attorney's possible conflict of interest and the potential perils of such a conflict."[14]

In this case, the Court conducted a *Curcio* hearing on May 30 and continued it on June 1, on the latter occasion after Scala had consulted with independent counsel appointed for the purpose. Although Scala's faith in Mr. Barket was evident, he was unable to give a narrative

---

[12]

*See, e.g., Baxter v. Palmigiano*, 425 U.S. 308, 318, 320 (1976) (adverse inference permissible from inmate's silence in prison disciplinary hearing or from invocation of privilege in civil case); *LiButti v. United States*, 107 F.3d 110, 121 (2d Cir. 1997) (civil cases); *Brink's Inc. v. City of New York*, 717 F.2d 700, 709-10 (2d Cir. 1983) (same).

[13]

*E.g., United States v. Curcio*, 680 F.2d 881, 889 (2d Cir. 1982) (internal quotation marks and citation omitted).

[14]

*Id.*

statement demonstrating his understanding of the nature and implications of Mr. Barket's conflict insofar as it relates to his invocation of his privilege against self-incrimination. Nor was that entirely surprising. Scala some time ago was found to be suffering from liver cancer. He repeatedly, and understandably, has voiced his concern about his health. He is worried about his medical treatment in Bureau of Prisons custody. He is, in a word, distracted. In all the circumstances, the Court could not find that he knowingly and intelligently has waived his right to conflict-free representation. Whether he could do so in the event the Court of Appeals ultimately were to conclude that the conflict is waivable will abide the event.

*Conclusion*

The government's motion to disqualify Bruce Barket, Esq., as counsel for defendant Scala is granted.

SO ORDERED.

Dated:　　June 12, 2006

　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　Lewis A. Kaplan
　　　　　　　　　　　　　　　　　　　　　United States District Judge