UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- x

UNITED STATES OF AMERICA,

        -against-                                        S1 04 Crim. 0070 (LAK)

SALVATORE SCALA,

                Defendant.

------------------------------------- x

**MEMORANDUM AND ORDER**

LEWIS A. KAPLAN, *District Judge.*

        On June 1, 2006, the Court denied Scala's motion to quash a subpoena *duces tecum* served by the government on Scala's attorney, Bruce Barket, Esq.[1] The subpoena sought the production by Mr. Barket of records relating to the source and amounts of payments for "legal, investigative and other fees for services provided in connection with [Scala's prior extortion prosecution in the Eastern District of New York], and any related proceedings."[2] In resisting the motion to quash, the government represented that the subpoena was prompted by the recent discovery of a $750 check written to "cash" by a person denoted "Victim #2."[3] The check bears the note "legal fees" and the endorsement of Mr. Barket or his law office.[4] The government

---

[1] Docket item 64.

[2] *Id.* at 2.

[3] *See id.*

[4] *See id.*

represented that this check prompted it to re-interview Victim #2, who stated that he had never been represented by Mr. Barket.[5] The government then re-interviewed a witness denoted "Victim #1," who explained that the amount of his extortion payments had increased in 2001, which coincided with Mr. Barket's representation of Scala in the Eastern District case.[6]

The government thus alleged that the subpoena sought documents relevant to the tax evasion and extortion counts against Scala – tax evasion, because payments to Mr. Barket for the benefit of Scala may have been taxable income to Scala, and extortion because "it will corroborate the testimony of an extortion victim, who is expected to testify that amounts of the extortion payments increased in 2001 in order to help pay for Scala's defense in the Eastern District case."[7]

The Court held that neither FED. R. CRIM. P. 17(c) nor *United States v. Nixon*[8] required the quashing of the subpoena.[9]  In considering whether the material sought was relevant, it stated that

> "[E]vidence that Scala paid his lawyer, or that someone paid the lawyer for Scala's benefit, in a year in which Scala filed no tax return – while far from conclusive – would be relevant . . . And surely proof that the extortion victim paid Mr. Barket for services rendered to Scala at a time when the victim claims that Scala demanded an

---

[5] *See id*.

[6] *See id*.

[7] *Id*. at 3-4.

[8] 418 U.S. 683 (1974).

[9] *See* docket item 64 at 6-11.

increase in payments to cover his legal expenses would be powerful collaboration of the victim's testimony."[10]

The Court found Scala's further arguments unpersuasive and denied the motion to quash.[11]

On June 9, 2006, Scala filed what he termed an "Acknowledgment of Changed Circumstances,"[12] which the Court treats as a motion for reconsideration. He there argued that the government had misrepresented the circumstances relating to and the relevance of the documents sought by the subpoena. He claimed that the government had acknowledged to Mr. Barket's attorney that Victim #2, the issuer of the $750 check, was not a victim of the alleged extortion of the V.I.P. Club that underlies counts 1 and 2 of this indictment.[13]

On June 12, 2006, the government clarified its position. The extortion of Victim #1, it asserts, was part of the V.I.P. Club extortion.[14] Thus, Victim #2's testimony about his extortion payments in 2001 for "legal fees" may collaborate Victim #1's testimony that his own payments were increased at that same time to pay Scala's fees in the Eastern District case.[15] Further, Victim #2's

---

[10] *Id.* at 8.

[11] *See id.* at 8-11.

[12] Docket item 73.

[13] *See id.* at 1.

[14] *See* Tr., Jun. 12, 2006, 12:19-13:8.

[15] *See id.*

testimony about his extortion payments is directly relevant to the tax evasion charges against Scala for that year.[16]

Scala argues that the decision to quash the subpoena rested on the flawed conclusion that the sought documents relate to the V.I.P. Club extortion and contends that, but for the government's misrepresentations, the Court would have analyzed the subpoena and motion to quash differently. The Court accordingly treats Scala's June 9 filing as a motion for reconsideration in light of newly discovered evidence and grants the motion to consider whether this additional information about Victim #2 should affect its conclusions.

The government's June 12 clarification differed somewhat from the Court's conclusions in its June 1 decision to deny the motion to quash. In that decision, the Court described Victim #2 as a victim of "*the* alleged extortion,"[17] referring to the extortion underlying counts 1 and 2, and it now is apparent that Victim #2 was not involved in the V.I.P. Club extortion. Further, the Court noted that the documents sought could collaborate Victim #2's testimony regarding the fees "paid [to] Mr. Barket for services rendered to Scala at a time when *the victim* claims that Scala demanded an increase in payments to cover his legal expenses."[18] It now appears that "*the victim*" should have been understood to be Victim #1, rather than Victim #2.

Nonetheless, the Court would have reached the same conclusion regarding the motion to quash had the government been more clear in its presentation, as the documents it seeks still are

---

[16] *See id.* at 13:23-14:1, 14:9.

[17] Docket item 64 at 3 (emphasis added).

[18] *Id.* at 8 (emphasis added).

relevant. First, Victim #2's expected testimony about his extortion payments for "legal fees" in 2001 still may collaborate Victim #1's testimony that *his* extortion payments – which allegedly *were* related to the V.I.P. Club – increased at the same time and for the same reason. Further, and as Scala does not contest, Victim #2's alleged payments for Scala's attorney fees are relevant to the tax evasion charge regardless of that victim's lack of involvement with the V.I.P. Club.[19] Thus, the documents in question remain relevant in light of the government's clarification of the involvement of Victim #2. Moreover, that clarification does not affect the Court's analysis of the government's due diligence, its ability to prepare properly for trial, or the privileged status of the materials.[20]

Accordingly, the motion for reconsideration[21] is granted. Upon reconsideration, the Court adheres to the original result.

SO ORDERED.

Dated:   June 13, 2006

_____
Lewis A. Kaplan
United States District Judge

---

[19] *See id.*

[20] *See id.* at 8-11.

[21] Docket item 73.